UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PAUL FENTON,

                                      Plaintiff,

    - v -                                                    9:20-CV-1564
                                                              (BKS/DJS)

CYNTHIA PROVOW[1] and
KRISTEN DEEP,

                                      Defendants.
_____

**APPEARANCES:**                                  **OF COUNSEL:**

PAUL FENTON
Plaintiff, *Pro Se*
42671604
CNYPC
P.O. Box 300
Marcy, New York 13403

HON. LETITIA JAMES                     ADRIENNE J. KERWIN, ESQ.
New York State Attorney General      Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

---

[1] Plaintiff's initial Complaint names Cynthia "Provel." Dkt. No. 1, Compl. However, it appears from the submissions that the correct spelling is "Provow." *See* Dkt. No. 19, Declaration of Cynthia Provow ("Provow Decl."). The Clerk shall update the docket accordingly.

## REPORT-RECOMMENDATION and ORDER[2]

Pro se Plaintiff Paul Fenton ("Plaintiff") brought this action under 42 U.S.C. § 1983 alleging that Defendants violated his constitutional rights under the Fourteenth Amendment while he was civilly confined at Central New York Psychiatric Facility. Dkt. No. 1, Compl. Following initial review, United States District Judge Brenda K. Sannes ordered that Plaintiff's Fourteenth Amendment due process claims against both Defendant Cynthia Provow and Defendant Kristen Deep proceed. Dkt. No. 3. Defendants have now moved for summary judgment requesting that the Court dismiss Plaintiff's claims. Dkt. No. 18. Plaintiff's response to the Motion consists only of a letter setting forth his factual allegations. Dkt. No. 21. Defendants then submitted a Reply to Plaintiff's letter. Dkt. No. 22, Reply. For the following reasons, this Court recommends that the Motion for Summary Judgment be granted.

### I. BACKGROUND

Plaintiff has been civilly confined at Central New York Psychiatric Facility since May 2017. Dkt. No. 19, Declaration of Cynthia Provow ("Provow Decl.") at ¶ 6; Dkt. No. 19-1, Declaration of Kristin Deep ("Deep Decl.") at ¶ 6. He has a history of ulcerative colitis and associated stomach issues dating back at least fifteen years. Dkt. No. 18-3, Reiner Decl., Ex. A, Plaintiff's Deposition ("Pl.'s Dep.") at p. 14. Although the exact timeline is unclear, sometime after he arrived at CNYPC from DOCCS custody, Plaintiff

---

[2] This matter was referred to the undersigned for a report-recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

began having increased stomach pain and requested to see a gastrointestinal ("GI") specialist. Compl. at ¶¶ 2, 3. At various points during the relevant time period, Defendant Kristen Deep, a Nurse Practitioner, and Defendant Cynthia Provow, M.D., were responsible for Plaintiff's medical care at CNYPC. Deep Decl. at ¶ 6; Provow Decl. at ¶ 6. Plaintiff claims that he waited for more than two and a half years, in severe pain every day, but was never sent out to see a GI specialist. Compl. at p. 3. Instead of his complaints being addressed, Plaintiff alleges that he was "passed on from doctor to doctor" while he continued to experience a lack of adequate medical treatment. *Id.* On initial review, Plaintiff's Complaint was liberally construed by the Court to assert a claim for medical indifference based upon the allegations that Defendants refused to send him to a specialist despite his repeated complaints of pain. Dkt. No. 3 at p. 7.

Within this claim for medical indifference, Plaintiff asserts several ways in which he alleges that the medical care provided was inadequate. First, he asserts that he was not provided with regular colonoscopies. Pl.'s Dep. at pp. 52-53. Second, he alleges that he was denied surgery for a hernia. Pl.'s Dep. at p. 22. Third, he asserts that a particular medication given for treatment of his colitis was not administered as frequently as it should have been. Pl.'s Dep. at pp. 51-52. He has also asserted that Defendants failed to send him to a GI specialist even though he was "bleeding very badly" and felt that he should be seen on an emergency basis rather than having to wait for an appointment. Pl.'s Dep. at pp. 33, 44.

## II. STANDARD OF REVIEW

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(C); see also *Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard ... they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora*

*Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). In considering a summary judgment motion, the Court's role "is carefully limited to discerning whether there are any genuine issues of material fact to be tried." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding pro se, the court must "read [his or her] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), accord, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"A party opposing summary judgment is required to submit admissible evidence." *Perry v. Rupert*, 2016 WL 11478229, at *3 (N.D.N.Y. Apr. 19, 2016) (citing *Spiegel v. Schulmann*, 604 F.3d 72, 81 (2d Cir. 2010)). "[T]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (emphasis in original) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). As a result, in order to defeat summary judgment, "nonmoving parties may not rely on conclusory allegations or unsubstantiated speculation." *Id.* (citation and internal quotation marks omitted). "At the summary judgment stage, a nonmoving party must offer some hard evidence showing that its version of the events is not wholly fanciful." *Id.* (citation and internal quotation marks

omitted). Statements "that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999).

### III. DISCUSSION

Defendants Provow and Deep seek summary judgment on the sole ground that Plaintiff has failed to establish deliberate indifference to his medical needs as a matter of law. Dkt. No. 18-1, Defs.' Mem. of Law at pp. 2-9. Defendants argue that Plaintiff's GI conditions were carefully and regularly monitored, that he was consistently provided with adequate treatment, and that at no point was there cause to believe that an emergency condition existed which necessitated more urgent treatment. *Id.* Because the Court concludes that the undisputed evidence in the record demonstrates the lack of deliberate indifference on the part of both Defendants, it recommends that the Motion be granted on that basis.

### A. Deficiencies in Plaintiff's Opposition

As required under Local Rule ("L.R.") 56.1, Defendants have filed a statement of material facts which includes specific citations to the summary judgment record. Dkt. No. 18-2, Def.'s Rule 56.1 Statement. Plaintiff has not formally responded to this statement. Instead, his only response was a short letter which reiterates many of the same assertions contained within the Complaint. Dkt. No. 21. He has not provided the Court

with any additional facts or admissible evidence aside from those allegations contained within the initial Complaint and subsequent Letter.[3]

Where, as here, a party has failed to respond in the manner required under L.R. 56.1(b), the rule "provides that facts in the movant's statement will be accepted as true (1) to the extent they are supported by evidence in the record, and (2) the nonmovant, if proceeding *pro se*, has been specifically advised of the possible consequences of failing to respond to the motion." *Perry v. Rupert*, 2016 WL 11478229, at *4 (citing *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996)).  However, courts also have "broad discretion to determine whether to overlook a failure to comply with local rules." *Id.*  To that end, the only materials that the Court has available to consider in opposition to the Motion are the unsworn statements contained within Plaintiff's submissions.  Although "unsworn statements are generally inadmissible in opposition to a motion for summary judgment," courts have nonetheless "been known to consider unsworn statements in opposition" on motions involving pro se plaintiffs.  *Id.*  As a result, such unsworn statements may be considered, but only to the extent that they are based on Plaintiff's personal knowledge or are otherwise supported by admissible evidence in the record.  *Id.*  Accordingly, the Court has considered the unsworn statements contained in Plaintiff's submissions, subject to the previously referenced caveats, in an effort to afford special solicitude given his pro se status.

---

[3] The Court notes that Plaintiff's letter references "witness testimony" of a Kimberly Brown, which he indicates he sent to Defendants' counsel. Dkt. No. 21 at pp. 1-2. However, he has not provided the Court with a copy of that testimony.

### B. Merits of Plaintiff's Claim

Plaintiff's claim for medical indifference as a civilly confined individual is governed by the Due Process Clause of the Fourteenth Amendment, rather than by the Cruel and Unusual Punishment Clause of the Eighth Amendment. *Charles v. Orange Cnty.*, 925 F.3d 73, 85 (2d Cir. 2019); *Williams v. Sykes*, 2019 WL 2374116, at *2 (N.D.N.Y. May 10, 2019), *report and recommendation adopted*, 2019 WL 2369882 (N.D.N.Y. June 5, 2019). The standard under the Due Process Clause is similar in this context to that under the Eighth Amendment, requiring the plaintiff first to satisfy "an 'objective prong' showing that the challenged conditions were sufficiently serious to constitute objective deprivations of [constitutional rights]" and second, to satisfy a "'mental element prong' - showing that the officer acted with at least deliberate indifference to the challenged conditions." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017); *see also Bell v. Carson*, 2018 WL 5993686, at *2 (N.D.N.Y. Nov. 15, 2018).

The first prong is evaluated under an objective standard and considers whether the alleged deprivation of adequate medical care was "sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "In the medical care context, analyzing this objective requirement involves two inquiries: whether the [plaintiff] was actually deprived of adequate medical care, and whether the inadequacy in medical care is sufficiently serious, which in turn requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the [plaintiff]." *Johnson v. Schiff*, 2019 WL 4688542, at *11 (quoting *Salahuddin v. Goord*, 467 F.3d at 279-80) (quotation marks

omitted). Defendants have conceded for purposes of this Motion that Plaintiff's "ulcerative colitis and associated issues demonstrate a sufficiently serious medical condition," and instead dispute that Dr. Provow and Nurse Practitioner Deep were deliberately indifferent to Plaintiff's medical needs. Defs.' Mem. of Law at pp. 4-5.

Consideration of Defendants' Motion, therefore, turns primarily upon the second prong, referred to as the mens rea or mental element prong. In contrast to the standard under the Eighth Amendment, in the Fourteenth Amendment context, it is not necessary for a plaintiff to establish subjective "proof of a malicious or callous state of mind" on the part of the defendant. *Charles v. Orange Cnty.*, 925 F.3d at 86 (citing *Darnell v. Pineiro*, 849 F.3d at 33-34). Instead, in the context of a Fourteenth Amendment Due Process claim, deliberate indifference "can be shown by something akin to recklessness." *Id.* The Second Circuit has explained that "'recklessness' can be defined subjectively (what a person actually knew, and disregarded), or objectively (what a reasonable person knew, or should have known)." *Darnell v. Pineiro*, 849 F.3d at 29 (citing *Farmer v. Brennan*, 511 U.S. at 836-37). As a result, deliberate indifference can be proven by "showing that the defendant official 'recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to [the plaintiff's] health or safety.'" *Charles v. Orange Cnty.*, 925 F.3d at 87.

Despite a somewhat-lessened threshold, evidence of mere negligence will not suffice. *Id.* "Thus, mere medical malpractice is not tantamount to deliberate indifference, but it may rise to the level of deliberate indifference when it involves culpable

9

recklessness, i.e., an act or failure to act … that evinces a conscious disregard of a substantial risk of serious harm." *Id.* (quoting *Cuoco v. Moritsugo*, 222 F.3d 99, 107 (2d Cir. 2000). Accordingly, a plaintiff "asserting a Fourteenth Amendment claim for deliberate indifference to his medical needs can allege either that the defendants *knew* that failing to provide the complained of medical treatment would pose a substantial risk to his health or that the defendants *should have known* that failing to provide the omitted medical treatment would pose a substantial risk to [his] health." *Id.* (emphasis in original).

Plaintiff's complaints largely stem from what he views as a failure to send him to appropriate specialists to treat his ongoing ulcerative colitis and hernia, fault for which he attributes to Defendants Deep and Provow. *See*, *e.g.*, Compl. In response, Defendants assert that Plaintiff received regular medical treatment for his conditions, and that difficulty in scheduling appointments with specialists was a result of the ongoing COVID-19 pandemic and therefore outside of their control. Defs.' Mem. of Law at p. 5. Defendants also argue that Plaintiff's history of noncompliance with treatment has exacerbated his symptoms. *Id.* Per Plaintiff's own statements, his history of ulcerative colitis and associated stomach issues predate his time at CNYPC, going back more than fifteen years. Pl.'s Dep. at p. 14. Ulcerative colitis "is a chronic inflammatory bowel disease that causes inflammation and ulcers in the large intestine (colon)." Provow Decl. at ¶ 8. The disease can "range from mild to severe" with symptoms that include "rectal bleeding, bloody diarrhea, abdominal cramps, and pain" and may be subject to

intermittent flare-ups. *Id.* Ulcerative colitis has no cure, although symptoms and flare ups "can be maintained through diet changes, medications, or, in rare cases, surgery." *Id.*

Defendant Kristen Deep, a Nurse Practitioner at CNYPC, was Plaintiff's primary care provider from October 2018 until October 2019. Deep Decl. at ¶ 6. Plaintiff alleges that he informed Deep of his stomach pain, hernia, and rectal bleeding, and she told him that she would put in a referral to a GI specialist. Compl. at p. 2, ¶ 6. However, Plaintiff claims he waited for two and a half years, in severe pain every day, and "never once" saw a GI specialist. *Id.* at p. 3, ¶ 7. Instead, he was "passed on from doctor to doctor" and now has Dr. Provow as a care provider. *Id.* at ¶ 9. Plaintiff began treating with Dr. Provow in October of 2020, just two months prior to the filing of the suit. *See* Provow Decl. at ¶ 6; Compl. (filed December 16, 2020).

Despite Plaintiff's allegations to the contrary, medical records demonstrate that both Defendants provided consistent care and treatment for his abdominal issues. As part of that treatment at CNYPC, Plaintiff was prescribed medications to manage ulcerative colitis and constipation including dicyclomine, docusate sodium, hydrocortisone acetate, mesalamine, psyllium, and various vitamin supplements. Provow Decl. at ¶ 9. Although Plaintiff was provided with these prescribed medications and repeatedly counseled on the importance of medication compliance to minimize symptom flare ups, the undisputed record shows that he often failed to take them. Provow Decl. at ¶ 12, Ex. A. For example, the record demonstrates that Plaintiff refused approximately 121 doses of medication for ulcerative colitis and other stomach issues in the time period from October 5, 2020 to November 22, 2020 alone. *Id.* Plaintiff's own statements confirm this documented

11

noncompliance. When asked at his deposition how often he refused to take his medication, Plaintiff's response was that he "refused all the time." Pl.'s Dep. at p. 66 ("Q: But while you were treating with Nurse Deep and Dr. Provow, how frequently would you say that you refused to take your medication? A: I refused all the time, but I do take it.").

In addition to those medications administered at CNYPC, Plaintiff received regular Remicade infusions at Faxton St. Luke's Healthcare and St. Elizabeth Medical Center. *Id.* at ¶ 10. Remicade is a treatment for moderate to severe ulcerative colitis that is administered intravenously with "maintenance doses" provided every eight weeks, following a more frequent schedule of initial doses. *Id.* Plaintiff claimed during his deposition that he should be receiving infusions every four weeks, rather than every eight. Pl.'s Dep. at pp. 47-48. To the extent that Plaintiff believed those infusions should have happened more frequently, "a mere disagreement as to the medically proper course of treatment is not a sufficient basis for a deliberate indifference claim[]." *Perry v. Rupert*, 2016 WL 11478229, at *9 (citing *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998)).

Moreover, Dr. Provow explained that the generally prescribed schedule for a patient receiving Remicade is as follows: "Three starter doses are administered to the individual: the initial dosage, followed by a dose two weeks after the initial dose and a third dose six weeks after the initial dose. After the starter doses, one maintenance dose is administered every 8 weeks." Provow Decl. at ¶ 10. In response to Plaintiff's continued symptoms, Dr. Provow subsequently updated Plaintiff's infusion schedule to

receive infusions every six weeks instead.  Provow Decl. at ¶ 16.  As is the case with his other medications, Plaintiff's own noncompliance undercuts his conclusory claims of deliberate indifference against Defendants with respect to the Remicade infusions, too.  For example, a medical note from August 25, 2020 documents that Plaintiff was "argumentative" and claimed he had not received his Remicade infusion, however, the writer of that note stated that Plaintiff had previously refused his Remicade infusion on July 6, 2020.  Deep Decl., Ex. D at p. 30; Provow Decl. at ¶ 15.  Dr. Provow also noted that Plaintiff was scheduled to receive a Remicade infusion in November 2021, but refused to comply with the required pre-infusion blood draw, which resulted in that infusion being cancelled.  Provow Decl. at ¶ 16.

Rather than demonstrating evidence of deliberate indifference, the record instead shows that Plaintiff received regular attention and care despite his frequent refusal to cooperate with treatment.  For example, on June 27, 2019, Deep changed the dosage of Plaintiff's mesalamine prescription for ulcerative colitis in accordance with the recommended guidelines.  Deep Decl., Ex. B, p. 13.  On July 22, 2019, Deep met with Plaintiff to review lab results, and ordered supplements based on the results of those labs.  *Id.* at p. 14.  On August 13, 2019, she reviewed Plaintiff's CT scan and thyroid lab results and discussed with him the importance of medication compliance.  *Id.* at p. 15.  On October 7, 2019, Deep brought Plaintiff in to again discuss the importance of medication compliance with medications provided for his ulcerative colitis.  *Id.* at p. 16.  Plaintiff also stated during his deposition that he saw Defendant Deep weekly to discuss his medical concerns.  Pl.'s Dep. at p. 29.

Plaintiff asserts, in a wholly conclusory manner, that Defendants Deep and Provow refused to send him to a GI specialist while he experienced "constant pain and suffering." Dkt. No. 21 at p. 1. Plaintiff also asserts that "Nurse Deep told Dr. Provow not to send [him] out for medical attention" and that he was instructed to stay in his room while he was bleeding. *Id.* at pp. 1-2. However, he has set forth no evidence in support of these assertions. "Mere conclusory allegations that are unsupported by any record evidence are insufficient to give rise to a genuine dispute of material fact." *Smith v. Rosati*, 2013 WL 1500422, at *12 (N.D.N.Y. Feb. 20, 2013). Nor has Plaintiff alleged any personal knowledge regarding the basis for this assertion. Evidence in opposition to a motion for summary judgment "must be based on personal knowledge." *Perry v. Rupert*, 2016 WL 11478229 (citing *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004)).

At the time Plaintiff's suit was filed, he had only been treating with Dr. Provow for approximately two months. *See* Compl.; Provow Decl. at ¶ 6. Like Defendant Deep, Defendant Provow detailed the difficulties experienced when trying to schedule appointments with outside providers, particularly during the COVID-19 pandemic. Provow Decl. at ¶¶ 18-22; Deep Decl. at ¶ 9. Deep and Provow, as providers at CNYPC, are not personally responsible for scheduling patients with outside providers. Deep Decl. at ¶ 9; Provow Decl. at ¶ 18. Instead, CNYPC providers make referrals to specialists, and appointments are then scheduled through the Office of Mental Health in Albany. *Id.* Deep states that Plaintiff's medical file shows that on August 21, 2018, non-party CNYPC nurse practitioner Josephine Slifka ordered a gastrointestinal consult for Plaintiff with an outside provider. Deep Decl. at ¶ 8. That appointment was scheduled for April 10, 2019.

14

*Id.* However, on February 15, 2019, Plaintiff left CNYPC and was brought to Manhattan Psychiatric Center to attend mandatory court appearances in New York City. Deep Decl. at ¶ 10. As a result, the April 10 appointment was cancelled, and Plaintiff was instead seen in the GI clinic at MPC. *Id.*, Ex. A, p. 7. A colonoscopy was scheduled for April 30, 2019 while Plaintiff was at MPC, *id.*, although Plaintiff refused to attend that appointment, reportedly because he knew he would be returning to CNYPC. Deep Decl. at ¶ 12 & Ex. B at p. 11. Plaintiff's documented refusal to attend a scheduled colonoscopy seriously undermines his conclusory allegation that he failed to receive regular colonoscopies as the result of deliberate indifference from his medical providers. *Wright v. Genovese*, 694 F. Supp. 2d 137, 157 (N.D.N.Y. 2010).

Moreover, the record shows that Plaintiff has in fact received colonoscopies, although perhaps not as frequently as he would have liked. When Dr. Provow took over Plaintiff's care in October 2020, his originally scheduled GI appointment had already been cancelled. Provow Decl. at ¶ 20. In November 2020, Dr. Provow called to inquire about the status of a GI consult for Plaintiff, but by winter of 2020/2021 an increase in cases of COVID again led to non-emergent appointments being cancelled. *Id.* at ¶¶ 21-22. Plaintiff did receive a colonoscopy on February 26, 2020, but in 2021 Dr. Provow again encountered difficulties scheduling Plaintiff for a colonoscopy due to the pandemic. *Id.* at ¶ 26. He was seen on June 8, 2021 for a GI consult by way of video teleconferencing, *id.* at ¶ 23, and in the interim, Dr. Provow regularly tested Plaintiff's hemoglobin levels to ensure that he was not experiencing excessive bleeding which could indicate a need for emergency treatment. Provow Decl. at ¶ 27. To the extent that

15

Plaintiff believes his condition warranted more urgent emergency treatment, Dr. Provow clearly stated that in her professional medical opinion, emergency treatment was not warranted at any point. *Id.* Plaintiff's disagreement with Dr. Provow's professional judgment cannot provide a basis for a claim of deliberate indifference, because while he may be entitled to adequate treatment, he does not have a constitutional "right to [the] treatment of his choice." *Perry v. Rupert*, 2016 WL 11478229, at *9 (citing *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986)).

Next, Plaintiff has alleged that the Defendants failed to schedule him to see a GI specialist for hernia surgery. Pl.'s Dep. at p. 22. He testified at his deposition that during his time at MPC he was diagnosed with a hernia and hospitalized for an exacerbation of his ulcerative colitis. Pl.'s Dep. at pp. 19-20. During the three months that Plaintiff was at another facility, Deep could not be fairly said to be responsible for any inadequacies in his medical care. Plaintiff did return to CNYPC after May 15, 2019, at which time Deep resumed responsibility for his care. Deep Decl. at ¶ 10. However, the records do not support that either Defendant displayed deliberate indifference to his medical needs upon his return.

Plaintiff complained of rectal bleeding on June 8, 2019, Ex. B. at p. 10, but refused his annual physical examination with Deep on June 18, 2019. *Id.* at p. 12. On June 25, 2019, Plaintiff's annual physical exam was completed during which time Defendant Deep noted a tennis-ball sized bulge and ordered abdomen and pelvis CAT scans to rule out an umbilical hernia. Deep Dep. Ex. B. at p. 13; Provow Decl. at ¶ 30. The scans were performed on July 31, 2019 and confirmed the presence of a midline ventral hernia.

Provow Decl. at ¶ 30. On August 13, 2019, Deep reviewed the CAT scan results with Plaintiff during a follow-up visit. Deep Decl. Ex. B at p. 16. Treatment notes from October 16, 2019 document the presence of an abdominal wall hernia which was not incarcerated, and further note that a GI consult was pending. *Id.* at p. 17. Dr. Provow ordered a repeat scan of Plaintiff's hernia on November 13, 2020, after she had taken over his care. Provow Decl. at ¶ 31. The hernia had increased in size at that time but showed "no evidence of incarceration or strangulation"[4] which might necessitate a more urgent course of treatment. *Id.* Despite frequent education and counseling from his providers on the importance of treatment compliance, Plaintiff continued to refuse medication regularly, including those prescribed to prevent constipation related to his colitis. *See* Provow Decl. at ¶¶ 9, 12 (noting that Plaintiff was prescribed psyllium and docusate sodium to treat constipation, but that he frequently refused to take medications as prescribed). Dr. Provow opined, and Plaintiff acknowledged, that the straining associated with constipation can cause a hernia to increase in size. Provow Decl. at ¶ 29; Pl.'s Dep. at p. 18.

Plaintiff was scheduled to have hernia surgery on at least two occasions, but those appointments were cancelled when elective surgeries were paused in response to the COVID-19 pandemic. Provow Decl. at ¶ 32. However, he did eventually undergo hernia surgery on December 30, 2021. *Id.* at ¶ 33. The hernia was routinely monitored by Dr. Provow in the interim to ensure that it had not elevated to an emergency condition.

---

[4] Provow notes that "[a] hernia is incarcerated if part of the intestine or abdominal tissue becomes trapped in the sac of the hernia, producing a bulge in the weak spot of the abdominal wall, whereas a strangulated hernia can cut off blood flow to part of the intestine." Provow Decl. at ¶ 28.

Provow Decl. at ¶ 32. That Plaintiff may have preferred more prompt surgical intervention does not, on this record, provide the basis for a constitutional violation. *Jamel L. Jenkins v. Dr. Trachtman*, 2017 WL 7163935, at *4 (N.D.N.Y. Dec. 21, 2017), *report and recommendation adopted sub nom., Jenkins v. Trachtman*, 2018 WL 626303 (N.D.N.Y. Jan. 30, 2018), *see also Johnson v. Wright*, 477 F. Supp. 2d 572, 576 (W.D.N.Y. 2007). Dr. Provow continued to monitor Plaintiff following his return to CNYPC after surgery and noted that he was "responding well." Provow Decl. at ¶ 33. However, Plaintiff continued to be non-compliant with recommended treatment by medical professionals, ignoring post-operative instructions to wear an abdominal binder at all times following the surgery. *Id.* Where, as here, there is no evidence that a delay in treatment was motivated by disregard for Plaintiff's care, no evidence that the delay had any significant impact on the eventual course of treatment, and ample documentation that his medical needs were otherwise addressed during the delay, deliberate indifference has not been established. *Pabon v. Goord*, 2003 WL 1787268, at *10-11 (S.D.N.Y. Mar. 28, 2003).

To the extent that Plaintiff faults Defendants Deep and Provow for the delays in his appointments with specialists, the record demonstrates that Defendants, as referring providers from CNYPC, did not and could not determine when Plaintiff would be seen by outside specialists. As a result, even if the Court were to find the delay unduly long, the delays were not attributable to Defendants and thus cannot provide a basis for the type of "conduct necessary to establish deliberate indifference." *Byrd v. Miller*, 2018 WL 5493036, at *4 (N.D.N.Y. Sept. 27, 2018). Furthermore, by all accounts, Defendants

Provow and Deep made reasonable efforts to obtain specialist appointments for Plaintiff and continued to monitor and address his underlying medical issues in the interim. This too establishes the lack of deliberate indifference. *Bennett v. Care Correction Sol. Med. Contracter*, 2017 WL 1167325, at *8-9 (S.D.N.Y. Mar. 24, 2017). A difference of opinion between Plaintiff and his medical providers "regarding medical treatment does not constitute deliberate indifference." *Perry v. Rupert*, 2016 WL 11478229, at *9 (citing *Chance v. Armstrong*, 143 F.3d at 709). Nor will deliberate indifference be found when a plaintiff "simply prefers an alternative treatment or feels that he did not get the level of medical attention that he desired." *Id.* (citation omitted). Finally, Plaintiff's own refusal to comply with treatment seriously undermines his conclusory claims that the treatment provided by Defendants was constitutionally inadequate. *See Wright v. Genovese*, 694 F. Supp. 2d at 157.

      Accordingly, the Court finds that given the evidence of treatment Plaintiff received while at CNYPC, no reasonable jury could find that either Deep or Provow was deliberately indifferent to Plaintiff's serious medical needs. *See Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (finding summary judgment appropriate where the nonmovant failed to provide "evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on an essential element of a claim.") (internal quotation marks omitted). The Court therefore recommends that summary judgment be granted due to Plaintiff's failure to establish deliberate indifference on the part of either Defendant.

## IV. CONCLUSION

For the reasons stated above, it is hereby

**RECOMMENDED**, that the Motion for Summary Judgment (Dkt. No. 18) be **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days[5] within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date:   August 5, 2022
        Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge

---

[5] If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).